IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **MICHAEL PEARSON,** | |
| *Plaintiff,* | **Case No. 2:26-cv-01564-RMG-TER** |
| v. | |
| **CLARENDON COUNTY; ERNEST FINNEY, III, in his official capacity as Solicitor for the Third Judicial Circuit; CLARENDON COUNTY SHERIFF'S OFFICE; CITY OF SUMTER; SOUTH CAROLINA ATTORNEY GENERAL'S OFFICE; KENNETH CLARK; THOMAS HAM; ERNEST FINNEY, III; MARK CREECH;** | **PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| *Defendants.* | |

Plaintiff Michael Pearson alleges the following against the Defendants:

## PARTIES AND JURISDICTION

1.    Plaintiff Michael Pearson is a resident of Florence County, South Carolina.

2.    Defendant Clarendon County is a political subdivision of the State of South Carolina.

3.    Defendant Ernest Finney, III, is sued in his official capacity as Solicitor of the Third Judicial Circuit which is a government agency that operates in Clarendon County, South Carolina. He is named as the head of the Office of the Third Circuit Solicitor. That office is referred to as "the Solicitor's Office" consistent with the way the office refers to itself.[1]

4.    Defendant Clarendon County Sheriff's Office is a government agency in Clarendon County, South Carolina.

---

[1] See https://www.sumtercountysc.gov/departments/s_-_z/solicitor_s_office/index.php (last accessed May 1, 2026)).

5.   Defendant City of Sumter is a legally formed municipality in Sumter County, South Carolina.

6.   Defendant South Carolina Attorney General's Office is a government agency in Richland County, South Carolina.

7.   Defendant Kenneth Clark is a law enforcement officer with the Clarendon County Sheriff's Office. His personal residence is unknown. At all times relevant to this action, he was acting under color of law and in the course and scope of his duties as a Clarendon County Sheriff's Office law enforcement officer. Clark is sued in his individual capacity.

8.   Defendant Thomas Ham was, at the time of the events giving rise to this Complaint, a law enforcement officer with the Clarendon County Sheriff's Office. His personal residence is unknown. At all times relevant to this action, he was acting under color of law and in the course and scope of his duties as a Clarendon County Sheriff's Office law enforcement officer. Ham is sued in his individual capacity.

9.   Defendant Ernest Finney, III, is the elected Solicitor for the Third Circuit, which encompasses Sumter, Lee, Clarendon, and Williamsburg Counties. Finney is sued in his individual capacity. The conduct of Finney as alleged in this Complaint, including his participation in witness interviews, his coordination with law enforcement, and his failure to disclose known exculpatory evidence to any court, are investigative and administrative functions, not advocative functions intimately associated with the judicial phase of the criminal process. Accordingly, Defendant Finney is not entitled to absolute prosecutorial immunity for the conduct alleged in this Complaint.

10.   Defendant Mark Creech is an investigator acting on behalf of Defendant Ernest Finney, III, in his official capacity as Solicitor for the Third Judicial Circuit. His personal residence is unknown. At all times relevant to this action, he was acting under color of law and in the course and scope of his duties as an investigator with

the Solicitor's Office. Creech is sued in his individual capacity.

11. The events giving rise to this action primarily took place in Clarendon County, South Carolina.

12. This Court has jurisdiction over these claims by virtue of removal from state court based on federal question jurisdiction arising pursuant to the United States Constitution and federal statutes: specifically, 42 U.S.C. §§ 1983 and 1988, as well as the Fourth and Fourteenth Amendments to the United States Constitution.

13. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14. Because venue was proper in Clarendon County, the Charleston Division is the correct division for this action.

15. This Court has jurisdiction over the parties and subject matter of this action.

**FACTS**

16. On May 15, 2010, Edward Gibbons was assaulted, bound with duct tape, and robbed at his home in Clarendon County.

17. Gibbons described three men attacking him in his garage and stealing money from him.

18. Gibbons was unable to identify any of the men who attacked him.

19. As the men were leaving in Gibbons' car, one of the three men saw Gibbons move and got out of the car to assault him again before all three left.

20. Gibbons' car was abandoned a few miles from the crime scene.

21. Defendant Clark and Defendant Ham responded to the crime scene the morning of the robbery.

22. Defendant Clark was the lead investigator from the Clarendon County Sheriff's Office on this case.

23. As of May 20, 2010, there were no suspects in the case.

24. Defendant Clark received a phone tip from an informant about three men spending a lot of money in the Clarendon County area.

25. The informant was angry with Plaintiff Michael Pearson and had an obvious, improper motive to implicate him in the crime.

26. Defendant Clark received information that Plaintiff would be at the family court and described what he would be wearing.

27. Defendant Clark approached Plaintiff at the family court and spoke with him. Plaintiff denied involvement in the case, and Defendant Clark did not arrest him.

28. Around the same time, Gibbons' car was processed, and fingerprints were obtained from the car.

29. The fingerprints were forwarded to Marie Hodge, a fingerprint examiner employed by the Sumter Police Department.

30. Hodge analyzed the fingerprints with the Automated Fingerprint Identification System ("AFIS").

31. AFIS is a computerized database of fingerprints used by law enforcement. It digitizes fingerprint images and stores them in a known database. Using an algorithm, the digital images are converted to a mathematical representation of the stored image. An unknown print can be run through the AFIS system to determine if it matches one of the stored fingerprints.

32. Plaintiff's prints were in the AFIS database of known prints.

33. None of the unknown prints forwarded to Hodge matched any known prints in AFIS, including Plaintiff's prints.

34. Hodge was given the names of persons of interest in the Gibbons robbery and printed out the database prints for the names she received.

35. Hodge visually compared the latent prints from the crime scene to the images she retrieved from AFIS.

36. Hodge's review was done after learning the name of the person law enforcement wanted to match the fingerprint, a practice known to produce false identifications due to cognitive bias and contrary to accepted forensic standards requiring blind analysis.

37. Proper forensic protocol requires fingerprint examiners to conduct analysis blind to the identity of suspects to avoid confirmation bias. Hodge's departure from this protocol rendered her identification unreliable and, upon information and belief, false.

38. Unsurprisingly, Hodge claimed one of the latent prints from the outside of the car matched the right thumbprint of Plaintiff.

39. Based on the fingerprint analysis, Defendant Clark obtained arrest warrants for Plaintiff.

40. Apart from the unreliable fingerprint identification, Defendants had no evidence linking Plaintiff to the Gibbons robbery. The victim could not identify Plaintiff. No physical evidence connected Plaintiff to the crime scene. Plaintiff had an alibi. The confidential informant who implicated Plaintiff had an obvious motive to lie. Defendant Clark himself admitted he did not believe Plaintiff was involved.

41. Defendant Ham directed Plaintiff to be taken to jail.

42. Both Defendant Clark and Defendant Ham were informed that Plaintiff had an alibi by both Plaintiff and members of Plaintiff's family who verified his alibi.

43. Plaintiff's alibi information was ignored.

44. Around the time of the arrest, Defendant Clark received a tip that Loretta Green had information about the crime.

45. Defendant Clark met with Green, who told him James Clark had admitted to committing the crime against Gibbons with some others. She did not implicate Plaintiff in the crime.

46. Around June 23, 2010, Defendant Clark learned the State Law Enforcement Division ("SLED") received a DNA hit on a man named Victor Weldon from testing of the duct tape removed from the victim.

47. Defendant Clark arrested Weldon for the Gibbons robbery.

48. Weldon denied involvement in the robbery.

49. Plaintiff and Weldon were tried jointly in the Clarendon County Court of General

Sessions in a jury trial beginning May 14, 2012.

50. On May 18, 2012, Plaintiff and Weldon were both convicted, and both received 60 years in prison. Based on Plaintiff's age and the parole ineligibility of the charges for which he was convicted, this was a de facto life sentence.

51. Plaintiff filed a direct appeal from his conviction, and on July 30, 2014, the South Carolina Court of Appeals reversed his conviction.

52. The Court of Appeals noted that the key evidence against Plaintiff was fingerprint evidence. The Court held the fingerprint evidence was circumstantial and only tied Plaintiff to a stolen vehicle without any other evidence showing when or how the fingerprint ended up on the vehicle. Based on this evidence and the lack of additional incriminating evidence, the jury could only have guessed at Plaintiff's involvement in the crime.

53. On March 23, 2016, the Supreme Court of South Carolina reversed the Court of Appeals and reinstated Plaintiff's conviction.

54. The Supreme Court cited five pieces of evidence it claimed supported its decision: (1) the fingerprint evidence, (2) Plaintiff's denial he knew the victim or where he lived and that he had ever come into contact with the vehicle, (3) the victim's testimony that one of his attackers had jumped out of the back of his car to assault him again, (4) Plaintiff and co-defendant Weldon were in the same vocational rehabilitation program for 4 days[2], and 5) DNA evidence implicated Weldon.

55. On May 27, 2016, Plaintiff filed a post-conviction relief ("PCR") application raising a claim of ineffective assistance of counsel against his trial counsel.

56. A PCR hearing was held on July 24, 2018. Plaintiff amended his claims for relief at the beginning of the hearing, adding that he had received new evidence that law enforcement possessed at the time of trial and never turned over.

---

[2] There is no evidence that Plaintiff and Weldon ever crossed paths during those 4 days.

57. The new evidence at the 2018 PCR hearing was information that, after Plaintiff's conviction, Weldon told law enforcement he did not know Plaintiff.

58. The PCR Court denied relief and dismissed the PCR application on November 20, 2018.

59. Victor Weldon, Plaintiff's co-defendant, also filed a PCR application alleging ineffective assistance of counsel. Although the PCR Court denied Weldon's petition, the South Carolina Court of Appeals reversed the PCR Court's decision and remanded Weldon's case for a new trial on October 6, 2021.

60. Weldon's case was returned to Clarendon County for prosecution by the Office of the elected Solicitor for the Third Circuit, Defendant Finney who is named in this case as Ernest Finney, III, in his official capacity as Solicitor for the Third Judicial Circuit. Defendant Finney handled the remanded prosecution of Weldon.

61. On or about January 20, 2023, Defendant Finney wrote a letter to Weldon's defense counsel offering a plea deal in exchange for Weldon revealing the names of the people involved in Gibbons' robbery.

62. Defendant Finney personally participated in the investigation of Weldon's case, including attending or directing witness interviews and coordinating with Defendants Clark and Creech regarding investigative findings.

63. On March 2, 2023, Weldon gave a statement that Plaintiff was not involved in the robbery and named the three individuals who were. Defendants Clark and Creech were present when this statement was made.

64. On March 15, 2023, Defendants Clark and Creech presented a photo lineup to Weldon during which he identified one of the actual perpetrators.

65. On April 20, 2023, Defendants Clark and Creech presented another photo lineup to Weldon during which he identified another one of the actual perpetrators. Weldon again gave a detailed statement of the crime, named the individuals involved, and stated that Plaintiff was not involved. Defendant Finney was present for the meeting.

66. On April 28, 2023, Weldon was polygraphed and gave a statement at the Sumter Law Enforcement Center.

67. At the April 28, 2023, meeting, Weldon again admitted his involvement in the robbery and detailed the events of the robbery and the people who were involved.

68. Weldon stated that Plaintiff Michael Pearson was not involved in the robbery in any way.

69. Weldon's polygraph revealed he was not deceptive when he stated Plaintiff was not involved in the crime.

70. Weldon had no incentive to lie during this meeting, as he had entered an agreement with Solicitor's Office that nothing he said could be used against him in any other prosecution.

71. Defendant Finney handled a guilty plea hearing on June 20, 2023, in which Weldon pled guilty to an 18-year sentence pursuant to a plea agreement. This was a significant reduction from his original sentence and was agreed to by Defendant Finney and the Solicitor's Office.

72. On June 22, 2023, Defendant Creech emailed a SLED agent to let her know that Weldon had accepted a plea deal, had admitted to his involvement in the crime, and named two others involved in the crime.[3]

73. Most importantly, Defendant Creech stated in his email that Weldon had passed a polygraph and specifically stated Plaintiff was not with them during the crime.

74. On July 27, 2023, Plaintiff met with Defendants Creech and Clark and was told about the new evidence regarding Weldon.

75. Plaintiff maintained his innocence, as he had since his initial contact with Defendant Clark years before.

---

[3] Although Weldon gave the names of three individuals who were part of the crimes, he only knew the nickname for one of them so a lineup could not be conducted.

76. On or about July 9, 2023, while investigators and the Solicitor's Office were on notice that Plaintiff was innocent of his conviction, Plaintiff filed a petition for habeas corpus relief in the United States District Court. The district court denied the petition on August 27, 2024.

77. On October 3, 2023, Defendant Creech contacted the South Carolina Department of Corrections Office of Inspector General and asked them to contact Plaintiff about taking a polygraph in reference to his case.

78. On October 12, 2023, the Office of Inspector General contacted Defendant Creech and informed him that Plaintiff was "absolutely [] willing to take a polygraph."

79. On November 2, 2023, Plaintiff took a polygraph test at SLED and denied he was involved in the crime against Gibbons. No deception was indicated.

80. On March 6, 2024, Defendant Clark verified Plaintiff's alibi for the morning of the Gibbons robbery. The information that verified this alibi was the exact same information available to, and ignored by, law enforcement years before.

81. On June 7, 2024, Plaintiff filed a PCR Application claiming his innocence and included information about Weldon's confession and his implication of others.

82. On January 23, 2025, the North Carolina Center for Actual Innocence ("the Center") sent a Freedom of Information Act request to Defendant Clarendon County Sheriff's Office ("Defendant Sheriff's Office") asking for records of physical evidence relating to Plaintiff's case.[4]

83. On January 31, 2025, Defendant Finney sent a letter to the Center stating he was investigating a new suspect, acknowledging "...another individual may have planned and assisted with the home invasion that led to Pearson's conviction," and stating he may be able "...to file a motion [on] behalf of Mr. Pearson to have his

---

[4] Plaintiff applied to the Center in May 2023, and the Center obtained a statement from Weldon as part of its investigation.

sentence reduced substantially." The letter also asked for an additional 60 days to respond to the request, stated an hourly rate for responding to the records request, and requested a deposit for ten hours of production costs.

84. Plaintiff received no response or action from any of the Defendants, despite the fact that the Solicitor and the Sheriff's Office were aware of his innocence for at least two years.

85. On March 13, 2025, Leonard Smith, one of the individuals named by Weldon, gave a statement to Defendants Clark and Creech implicating himself, Weldon, and two others, but not Plaintiff, in the robbery and attack of the victim.

86. On June 2, 2025, the Center filed a Notice of Representation of Plaintiff.

87. On June 11, 2025, Plaintiff's attorneys emailed Defendant Finney and informed him that they would be pursuing relief for Plaintiff.

88. On June 13, 2025, Defendant Finney left a message for Plaintiff's attorneys stating that a hearing would be scheduled in Plaintiff's case for July 14 or 16, 2025, in Clarendon County.

89. During a phone call with the Center on June 18, 2025, Defendant Finney acknowledged Plaintiff's innocence, said he would be the moving party to effect Plaintiff's release, and asked the Center to draft a motion vacating Plaintiff's conviction.

90. On June 19, 2025, the Center sent a proposed motion to Defendant Finney.

91. On June 20, 2025, Center attorneys sent a draft consent order for Plaintiff's release from prison.

92. On June 25, 2025, after Defendant Finney did not respond to emails with the proposed filings, Plaintiff's attorneys informed Defendant Finney they were available for the July 14, 2025, hearing but also asked him to consider the draft order so that Plaintiff, an innocent man serving time for a crime he did not commit, could be released sooner.

93. On June 26, 2025, Defendant Finney called Plaintiff's attorneys and told them

Plaintiff needed to agree to never return to Clarendon County and waive all civil claims related to his wrongful conviction, or Finney would not cooperate in releasing Plaintiff from prison.

94. On June 28, 2025, Plaintiff filed an amended PCR application reflecting the untenable demands Defendant Finney made despite his knowledge that Pearson was innocent.

95. On July 2, 2025, Defendant Finney left a voicemail for Defendant Clark informing him that the hearing would be cancelled and that he was going to "let them fight it out in court."

96. On July 11, 2025, Defendant Finney contacted Plaintiff's attorneys and informed them that he would contact Defendant Attorney General's Office and inform them of his position, including cancelling the July hearing and forcing Plaintiff to wait for a PCR hearing scheduled by Defendant Attorney General's Office.

97. On July 24, 2025, Defendant Finney wrote to Defendant Attorney General's Office and admitted that Plaintiff was innocent. He also claimed that the conditions that Plaintiff not return to Clarendon County and waive his civil claims were merely requests. However, this is inconsistent with his cancelling the hearing and stopping his cooperation with Plaintiff's attorney to get Plaintiff out of prison.

98. During this same time, Defendant Attorney General's Office was actively fighting Pearson's release, ignoring and discounting the evidence of his innocence, arguing it did not need to accept the investigation by Clarendon County or Defendant Finney's recognition of Plaintiff's innocence, and otherwise keeping Pearson in prison for a crime he did not commit.

99. Defendant South Carolina Attorney General's Office's conduct went beyond legitimate adversarial litigation. Despite being informed by Defendant Finney, who had firsthand knowledge of the investigation, that Plaintiff was innocent, Defendant Attorney General's Office made no independent inquiry into Plaintiff's innocence and instead actively opposed his release based solely on procedural

arguments unrelated to the merits of his innocence claim.

100. Defendant South Carolina Attorney General's Office had a duty, independent of its adversarial role, not to actively obstruct the release of a person it knew or should have known was innocent.

101. On August 28, 2025, after serving over 15 years in prison for a crime he did not commit, Plaintiff's convictions were vacated, he was granted a new trial, and he was released on a personal recognizance bond.

102. On September 8, 2025, all charges against Plaintiff were nolle prossed.

## CAUSES OF ACTION

## Pretrial Claims

## Claim 1: Malicious Prosecution against Defendants Clarendon County and Clarendon County Sheriff's Office

103. Defendants Clarendon County and Clarendon County Sheriff's Office are liable for the actions of their employees or agents during the course and scope of their employment.

104. Criminal proceedings against the Plaintiff were instituted at the direction of Defendant Clarendon County and Defendant Clarendon County Sheriff's Office.

105. The criminal proceedings were terminated in Plaintiff's favor when the charges were dismissed based on his innocence.

106. Defendants lacked probable cause to accuse Plaintiff of the charged crimes.

107. The lack of probable cause to support Defendants' accusations against Plaintiff, implied the existence of malice in the accusation.

108. Plaintiff suffered damages, including but not limited to embarrassment, humiliation, mental anguish, loss of standing in the community, the cost and inconvenience of fighting this false charge, the health issues directly related to serving a prison sentence he should not have served, and the many years in prison for a crime he did not commit.

109. Plaintiff is entitled to an award of actual damages as a result of this malicious

prosecution.

## Claim 2: False Imprisonment against Defendants Clarendon County and Clarendon County Sheriff's Office

110. Defendants Clarendon County and Clarendon County Sheriff's Office are liable for the actions of their employees or agents during the course and scope of their employment.

111. One or more employees of Defendants intentionally and unlawfully restrained the Plaintiff by seeking an arrest warrant for Plaintiff and causing him to be arrested.

112. Plaintiff did not violate any law.

113. The restraint upon Plaintiff was unlawful.

114. Defendants' actions were the direct and proximate cause of Plaintiff's deprivation of liberty, physical harm, and emotional harm, including but not limited to stress, embarrassment, fear, health issues developed as a result of confinement and years in prison for a crime he did not commit.

## Claim 3: Negligent Training and Supervision against Defendants Clarendon County and Clarendon County Sheriff's Office

115. Defendants Clarendon County and Clarendon County Sheriff's Office owed Plaintiff a duty to exercise reasonable care in the training and supervision of its employees.

116. Defendants breached their duty to Plaintiff in failing to properly train or supervise its employees, including but not limited to the following:

   a. Failure to properly investigate employees' backgrounds.

   b. Failure to properly determine whether employees were fit for their job.

   c. Failure to properly train employees to perform their duties.

   d. Failure to ensure employees were exercising their duties in a diligent, proper, and reasonable manner.

   e. Each instance of Defendants' breach as described was related to and contributed to Plaintiff's wrongful conviction.

117.    Defendants' breach of duty as described above was the direct and proximate cause of injury to the Plaintiff.

118.    Plaintiff is entitled to all actual damages proximately caused by this breach of duty.

**Claim 4: Negligence and Gross Negligence against Defendants Clarendon County and Clarendon County Sheriff's Office**

119.    Defendants Clarendon County and Clarendon County Sheriff's Office, and their agents and employees, owe a duty to members of the public, and specifically to Plaintiff, to exercise care in making accusations against potential defendants and seeking warrants against those potential defendants.

120.    Defendants, through their law enforcement agents, failed to take the slightest care in seeking a warrant against Plaintiff and specifically sought a warrant in the face of evidence that there was no probable cause for such a warrant.

121.    This breach of duty of care caused damages to the Plaintiff as previously described, and he is entitled to all actual damages caused by this breach.

**Claim 5: Negligence and Gross Negligence against Defendant City of Sumter**

122.    Defendant City of Sumter, through its agents, including fingerprint examiners, owed a duty to members of the public, and specifically to Plaintiff, to exercise care in reviewing forensic evidence, including latent print evidence.

123.    Defendant failed to take the slightest care in analyzing the fingerprint evidence, including but not limited to failing to follow proper procedure in analyzing the prints to ensure there was not a false match.

124.    This breach of duty of care caused damages to the Plaintiff as previously described, and he is entitled to all actual damages caused by this breach.

**Claim 6: Negligent Training and Supervision against Defendant City of Sumter**

125.    Defendant City of Sumter owed Plaintiff a duty to exercise reasonable care in the training and supervision of its employees.

126.    Defendants breached their duty to Plaintiff in failing to properly train or supervise its employees, including but not limited to the following:

-14-

a. Failure to properly investigate employees' backgrounds.

b. Failure to properly determine whether employees were fit for their job.

c. Failure to properly train employees to perform their duties.

d. Failure to ensure employees were exercising their duties in a diligent, proper, and reasonable manner.

e. Each instance of Defendants' breach as described was related to and contributed to Plaintiff's wrongful conviction.

127. Defendants' breach of duty as described above was the direct and proximate cause of injury to the Plaintiff.

128. Plaintiff is entitled to all actual damages proximately caused by this breach of duty.

**Claim 7: 42 U.S.C. § 1983 claim for violation of the Fourth and Fourteenth Amendments against Defendants Clark and Ham**

129. Defendants Clark and Ham are sued in their individual capacity.

130. Defendants initiated a false arrest and baseless criminal prosecution against the Plaintiff.

131. Defendants were acting under color of law when initiating and maintaining the false arrests and baseless criminal prosecutions against Plaintiff.

132. The Fourth Amendment to the United States Constitution guarantees all citizens, including Plaintiff, the right to be free from unlawful seizure.

133. The Fourteenth Amendment to the United States Constitution guarantees no State shall deprive a citizen of liberty without due process of law.

134. Defendants unlawfully caused the arrest of Plaintiff without probable cause.

135. Defendants unlawfully initiated and maintained prosecution against the Plaintiff without probable cause.

136. Defendants' false arrest and malicious prosecution of Plaintiff violated his Fourth and Fourteenth Amendment rights.

137. Defendants' actions caused the wrongful conviction and incarceration of Plaintiff.

138. Plaintiff is entitled to all actual damages resulting from his arrest and prosecution.

139. Plaintiff is entitled to punitive damages for the reckless, willful, and wanton conduct of Defendants.

## Post-Conviction Claims

### Claim 8: False Imprisonment against Defendants Clarendon County and Clarendon County Sheriff's Office

140. Plaintiff was detained in prison after multiple governmental parties, including the Defendants Clarendon County and Clarendon County Sheriff's Office, were aware he was no longer guilty of the charges for which he was serving time in prison.

141. The incarceration of Plaintiff after Defendants became aware he did not commit the crimes for which he was in prison was both intentional and unlawful.

142. Defendants' actions were the direct and proximate cause of Plaintiff's deprivation of liberty, physical harm, and emotional harm, including but not limited to stress, embarrassment, fear, health issues developed because of confinement and years in prison for a crime he did not commit.

### Claim 9: False Imprisonment against Defendant Ernest Finney, III, in his official capacity as Solicitor for the Third Judicial Circuit

143. Plaintiff was detained in prison after multiple governmental parties, including the Defendant Ernest Finney, III, in his official capacity as Solicitor for the Third Judicial Circuit, were aware he was no longer guilty of the charges for which he was serving prison time.

144. The incarceration of Plaintiff after Defendant became aware he did not commit the crimes for which he was in prison was both intentional and unlawful.

145. Defendant's actions were the direct and proximate cause of Plaintiff's deprivation of liberty, physical harm, and emotional harm, including but not limited to stress, embarrassment, fear, health issues developed as a result of confinement and years in prison for a crime he did not commit.

## Claim 10: False Imprisonment against Defendant South Carolina Attorney General's Office

146.    Plaintiff was detained in prison after multiple governmental parties, including the Defendant South Carolina Attorney General's Office, were aware he was no longer guilty of the charges for which he was serving prison time.

147.    The incarceration of Plaintiff after Defendants became aware he did not commit the crimes for which he was in prison was both intentional and unlawful.

148.    Defendants' actions were the direct and proximate cause of Plaintiff's deprivation of liberty, physical harm, and emotional harm, including but not limited to stress, embarrassment, fear, health issues developed because of confinement and years in prison for a crime he did not commit.

## Claim 11: Negligence and Gross Negligence against Defendants Clarendon County and Clarendon County Sheriff's Office

149.    Defendants Clarendon County and Clarendon County Sheriff's Office had a duty not to allow Plaintiff to remain in prison for a crime he did not commit after receiving evidence that he was innocent of the charges for which he was serving prison time.

150.    Defendants found out that Plaintiff did not commit the crime for which he was convicted and sent to prison.

151.    Defendants took no action for years after learning Plaintiff was innocent of the crime for which he was serving prison time.

152.    Defendants breached their duty to Plaintiff by failing to take any action to secure Plaintiff's release after learning he was innocent.

153.    Defendants' breach of duty to Plaintiff was the proximate cause of damage to Plaintiff, and he is entitled to actual damages as authorized by law.

## Claim 12: Negligence and Gross Negligence against Defendant Ernest Finney, III, in his official capacity as Solicitor for the Third Judicial Circuit

154.    Defendant Ernest Finney, III, in his official capacity as Solicitor for the Third

Judicial Circuit, along with any agents acting on behalf of the Solicitor's Office, had a duty not to allow Plaintiff to sit in prison for a crime he did not commit after receiving evidence that he was innocent of the charges for which he was serving prison time.

155. Defendant found out that Plaintiff did not commit the crime for which he was convicted and sent to prison.

156. Defendant took no action for years after learning Plaintiff was innocent of the crime for which he was serving prison time.

157. Defendant breached its duty to Plaintiff by failing to take any action to secure Plaintiff's release after learning he was innocent.

158. Defendant's breach of duty to Plaintiff was the proximate cause of damage to Plaintiff, and he is entitled to actual damages as authorized by law.

## Claim 13: Negligence and Gross Negligence against Defendant South Carolina Attorney General's Office

159. Defendant South Carolina Attorney General's Office had a duty not to allow Plaintiff to sit in prison for a crime he did not commit after receiving evidence that he was innocent of the charges for which he was serving prison time.

160. Defendant found out that Plaintiff did not commit the crime for which he was convicted and sent to prison.

161. Defendant took no action for years after learning Plaintiff was innocent of the crime for which he was serving prison time.

162. Defendant breached its duty to Plaintiff by failing to take any action to secure Plaintiff's release after learning he was innocent.

163. Defendant's breach of duty to Plaintiff was the proximate cause of damage to Plaintiff, and he is entitled to actual damages as authorized by law.

## Claim 14: 42 U.S.C. § 1983 Fourteenth Amendment Due Process Claim for Failure to Act on Evidence of Innocence against Defendant Ernest Finney, III

164. Plaintiff had a state-created right to evidence of his innocence discovered post-

conviction, and the accompanying right to present that evidence to the Courts.

165. Plaintiff had a due process right to obtain and use evidence of his innocence in the court system.

166. Defendant had a duty to disclose evidence of Plaintiff's innocence and ensure Plaintiff was not in prison for a crime he did not commit.

167. Defendant Finney's intent to obstruct Plaintiff's access to evidence of his innocence is demonstrated by his demand that Plaintiff waive all civil claims and agree never to return to Clarendon County as a condition of his cooperation in securing Plaintiff's release.

168. These demands served no legitimate prosecutorial purpose and were designed solely to benefit Defendant Finney personally by avoiding civil liability for his actions.

169. Despite admitting Plaintiff's innocence on multiple occasions, Defendant Finney took no action to inform any court of this fact until July 24, 2025, and only after cancelling a hearing that could have resulted in Plaintiff's earlier release.

170. Defendant failed to disclose the information he had regarding Plaintiff's innocence to any Court or use the information in any way to secure Plaintiff's release from a sentence for a crime which he did not commit, in violation of Plaintiff's due process rights as secured by the United States Constitution.

171. Defendant's actions were the cause of Plaintiff wrongfully remaining in prison.

172. Plaintiff is entitled to all actual damages resulting from this failure to act on information or disclose information that Plaintiff was innocent of the crime for which he was serving time.

173. Plaintiff is entitled to punitive damages for the reckless, willful, and wanton conduct of Defendants.

**Claim 15: 42 U.S.C. § 1983 Fourteenth Amendment Due Process Claim for Failure to Act on Evidence of Innocence against Defendant Kenneth Clark**

174. Plaintiff had a state-created right to evidence of his innocence discovered post-

conviction, and the accompanying right to present that evidence to the Courts.

175. Plaintiff had a due process right to obtain and use evidence of his innocence in the court system.

176. Defendant had a duty to disclose evidence of Plaintiff's innocence and ensure Plaintiff was not in prison for a crime he did not commit.

177. Defendant's knowledge of Plaintiff's innocence is demonstrated by his own verification of Plaintiff's alibi on March 6, 2024, using the same information that had been available to and ignored by law enforcement since Plaintiff's arrest in 2010.

178. Despite verifying Plaintiff's alibi and being present when Weldon exculpated Plaintiff, Defendant Clark took no action to inform a court or anyone else of this information for more than seventeen months.

179. Defendant failed to disclose the information he had regarding Plaintiff's innocence to any Court or use the information in any way to secure Plaintiff's release from a sentence for a crime which he did not commit, in violation of Plaintiff's due process rights as secured by the United States Constitution.

180. Defendant's actions were the cause of Plaintiff wrongfully remaining in prison.

181. Plaintiff is entitled to all actual damages resulting from this failure to act on information or disclose information that Plaintiff was innocent of the crime for which he was serving time.

182. Plaintiff is entitled to punitive damages for the reckless, willful, and wanton conduct of Defendants.

**Claim 16: 42 U.S.C. § 1983 Fourteenth Amendment Due Process Claim for Failure to Act on Evidence of Innocence against Defendant Mark Creech**

183. Plaintiff had a state-created right to evidence of his innocence discovered post-conviction, and the accompanying right to present that evidence to the Courts.

184. Plaintiff had a due process right to obtain and use evidence of his innocence in the court system.

-20-

185. Defendant had a duty to disclose evidence of Plaintiff's innocence and ensure Plaintiff was not in prison for a crime he did not commit.

186. Defendant Creech's knowledge of Plaintiff's innocence and intent not to disclose it is demonstrated by his June 22, 2023, email to SLED stating Weldon had "passed a polygraph" and "specifically stated [Plaintiff] was not with them during the crime," yet Defendant Creech took no steps to ensure this information was provided to any court or Plaintiff or his counsel.

187. Defendant failed to disclose the information he had regarding Plaintiff's innocence to any Court or use the information in any way to secure Plaintiff's release from a sentence for a crime which he did not commit, in violation of Plaintiff's due process rights as secured by the United States Constitution.

188. Defendant's actions were the cause of Plaintiff wrongfully remaining in prison.

189. Plaintiff is entitled to all actual damages resulting from this failure to act on information or disclose information that Plaintiff was innocent of the crime for which he was serving time.

190. Plaintiff is entitled to punitive damages for the reckless, willful, and wanton conduct of Defendants.

**Claim 17: *Monell* liability against Defendant Clarendon County for Failure to Maintain Policies and Failure to Train, Supervise, and Discipline Officers**

191. Defendant Clarendon County, through the acts of a final policymaker, was deliberately indifferent to the need for policies and procedures for law enforcement officers to properly correct the injustice of an innocent person being arrested, convicted, and sentenced wrongfully.

192. Defendant Clarendon County, through the acts of a final policymaker, was deliberately indifferent in maintaining a policy, custom, or pattern and practice of failing to properly train law enforcement officers in how to handle new evidence of a person's innocence and how to conform to law enforcement's constitutional obligations regarding the disclosure of evidence.

193. It would have been plainly obvious to a reasonable policymaker that failing to enact and maintain official policies and procedures and failing to adequately train, supervise, and discipline Clarendon County law enforcement officers in connection with constitutional obligations regarding evidence would lead to the deprivation of individuals' constitutional rights.

194. Solicitor Ernest Finney, III, before and during the events described in this Complaint, was a final policymaker for Clarendon County over all investigative activities and evidence matters within Clarendon County.

195. Under South Carolina law, the Circuit Solicitor has exclusive authority over criminal prosecutions in the circuit and is not subject to the supervision or control of any county official in the exercise of prosecutorial and investigative functions.

196. Clarendon County has no policy, procedure, or protocol governing how law enforcement officers or the Solicitor's Office should handle newly discovered evidence of a convicted defendant's innocence.

197. Clarendon County has no policy requiring disclosure of post-conviction exculpatory evidence to courts, defense counsel, or convicted individuals.

198. The acts and omissions of Defendant Finney during the described time constituted a policy, custom, or pattern and practice of Clarendon County.

199. Defendant Finney knew or should have known that there had been and was a failure to train law enforcement officers in how to handle new evidence of a convicted defendant's innocence.

200. The absence of any policy or training regarding post-conviction innocence evidence created a predictable risk that innocent individuals would remain incarcerated after evidence of their innocence became known to law enforcement and prosecutors. This risk was so obvious that the failure to adopt such policies constitutes deliberate indifference to constitutional rights.

201. The policies, customs, patterns, and practices, and failure to enact procedures by Clarendon County were the proximate cause of Plaintiff's wrongful imprisonment.

202. Failure to adequately train officers and a proper policy for the handling and reporting of new evidence were the moving forces behind the denial of Plaintiff's constitutional rights as described in this Complaint.

203. Even without a pattern of activity, Defendant Finney was a final policymaker for Clarendon County and made a calculated choice to follow an unconstitutional course of action when he allowed, condoned, and ratified the concealment of exculpatory evidence from Plaintiff and the failure to take any action after receiving credible evidence of Plaintiff's innocence.

204. Defendant Clarendon County is liable for the deprivation of Plaintiff's constitutional rights caused by the actions described above.

205. Based on the conduct of Defendant Clarendon County as described above, the Plaintiff is entitled to all actual, punitive, and other damages resulting from this deprivation of his constitutional rights.

**PRAYER FOR RELIEF**

Having fully pled his causes of action against the Defendants, the Plaintiff asserts his right to a jury trial pursuant to the Seventh Amendment to the United States Constitution, requests the Court enter judgment against the Defendants, and award the following relief:

    a. Actual damages;

    b. Punitive damages against Defendants subject to such damages by law;

    c. All costs and attorneys' fees recoverable under any state law, federal law, or other authority;

    d. Any other damages available and authorized by any state law, federal law, or other authority; and

    e. Any other relief this Court deems just and proper.

Respectfully Submitted,

*s/ Joshua Snow Kendrick*
Joshua Snow Kendrick (SC ID 70453)
KENDRICK & LEONARD, P.C.

-24-

7 Mills Avenue (29605)
P.O. Box 6938
Greenville, SC 29606
Tel: (864) 760-4000
Josh@KendrickLeonard.com

Christopher S. Leonard (SC ID 80166)
KENDRICK & LEONARD, P.C.
1516 Richland Street (29201)
P.O. Box 886
Columbia, SC 29202
Tel: (803) 667-3186
Chris@KendrickLeonard.com

May 11, 2026
Greenville, South Carolina