IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

MICHAEL PEARSON,

     *Plaintiff,*

v.

CLARENDON COUNTY; ERNEST FINNEY, III, in his official capacity as Solicitor for the Third Judicial Circuit; CLARENDON COUNTY SHERIFF'S OFFICE; CITY OF SUMTER; SOUTH CAROLINA ATTORNEY GENERAL'S OFFICE; KENNETH CLARK; THOMAS HAM; ERNEST FINNEY, III; MARK CREECH;

     *Defendants.*

Case No. 2:26-cv-01564-RMG-TER

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT SOUTH CAROLINA ATTORNEY GENERAL'S OFFICE'S MOTION TO DISMISS

## INTRODUCTION

Michael Pearson is innocent of the crime for which he spent years in prison. He has sued the Defendants not just for compensation, but for accountability. One of those responsible parties is the South Carolina Attorney General's Office ("Defendant SCAG" or "SCAG"). Mr. Pearson spent years in prison for a crime he did not commit. By the summer of 2025, numerous parties were aware Michael was innocent and refused to help release him from his wrongful incarceration.

Defendant SCAG's motion to dismiss asks this Court to shield its behavior based on absolute immunity. It further argues it has no duty to properly investigate a claim of innocence, regardless of how credible such a claim is. Neither proposition is correct.

The scope of absolute immunity under both federal and state law is defined by the function of the actor, not the identity. Investigation is not advocacy. The failure to discharge a disclosure obligation recognized by our Supreme Court and codified in Rule 3.8(g) and (h) of the South Carolina Rules of Professional Conduct is not advocacy. When an agency assumes investigating the innocence of an imprisoned man, receives credible

and convincing information of that innocence, and then uses rote procedural arguments to forestall his release, that agency has assumed a duty of care the common law has long recognized. The allegations in Plaintiff's complaint, taken as true as they must be at this stage, are more than enough to assign liability to the Defendant SCAG and the motion to dismiss should be denied.

## MOTION TO DISMISS STANDARD

The Court's duty at this stage is limited. All facts alleged in the complaint are considered true and all reasonable inferences are drawn in Plaintiff's favor. *Samuel Sherbrooke Corp., Ltd. v. Mayer*, 159 F.4th 252, 256 (4th Cir. 2025). The Court does not evaluate factual disputes and does not consider the merits of the claim. *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024). If the facts, considered true, raise a plausible claim for relief then the case proceeds. *Id*.

Michael Pearson's complaint meets this standard, and the Court should deny the pending motion to dismiss.

## FACTS

Michael Pearson was arrested and convicted of a home invasion on the slimmest of evidence. The following facts are taken directly from the complaint filed, and for the purposes of the upcoming hearing are true, along with any reasonable inferences from those facts.

A phone tip from an informant who was angry with the Plaintiff was the only reason the police initially considered Michael Pearson a suspect. Fingerprints lifted from the car stolen in the home invasion were run through the Automated Fingerprint Identification System ("AFIS"). Despite the fact Michael's fingerprints were in AFIS at the time, there was no match to the prints from the crime scene. After learning the names of the suspects, which included Michael, the fingerprint examiner reviewed the prints again and this time matched one to him.

Despite informing the police of his alibi, no police officer ever investigated it before Michael was prosecuted. While his alibi was ultimately corroborated many years later,

that was no help to Michael and he was wrongfully convicted. Another informant met with the police around the time of Michael's arrest and told them about a man who admitted to the crime but did not implicate Michael. Michael was convicted and sentenced to 60 years in prison.

The South Carolina Court of Appeals reversed the conviction based on the lack of evidence. Even with the fingerprint, it was circumstantial and the jury's verdict had to be based on mere speculation. *State v. Pearson*, 2014 S.C. App. LEXIS 285, *13-14 (Ct. App. 2014). The Supreme Court later reinstated the conviction, based on the fingerprint and several pieces of evidence that had nothing to do with Plaintiff, and his imprisonment continued. *State v. Pearson,* 415 S.C. 463, 473-74 (2016).

Plaintiff had been tried with another man, Victor Weldon, who was also convicted. In 2021, Weldon's conviction was overturned. Ironically, it was overturned because his trial lawyer had not presented his alibi in court. Weldon got a new trial because of a false alibi. He later pled guilty and admitted to his involvement in the home invasion, so his alibi was obviously manufactured. Weldon received a plea deal based on his willingness to come clean about who was involved in the home invasion.[1]

Defendants Clark, Creech, and Finney were all involved in Weldon's new statements. All were aware of Plaintiff's innocence. None made any effort to obtain his release from prison. Even when informed by lawyers from the North Carolina Center for Actual Innocence that they were representing Plaintiff, Defendant Finney (the elected Solicitor for the Third Circuit) only stated he might be able to substantially reduce Plaintiff's sentence. It took nearly six more months for Finney to acknowledge he knew Plaintiff did not commit the crime for which he had been serving over 15 years in prison.

On July 24, 2025, Finney wrote to the Defendant Attorney General's Office and admitted Pearson had not committed the crime. This letter was ignored by the Defendant

---

[1] There was far less uncertainty about Weldon's involvement in the crime; his DNA was linked to the crime scene.

SCAG. Despite their claims to the Supreme Court that they were investigating Plaintiff's innocence, they were not. Instead, they were making every effort to keep an innocent man in prison. After seeing the writing on the wall and realizing that they would likely not successfully keep an innocent man in jail, the Defendant SCAG finally relented and quit fighting Plaintiff Michael Pearson's release.

## THE COURT CAN CONSIDER DOCUMENTS FILED BY THE DEFENDANT IN RELATED PROCEEDINGS

**Documents filed by the Defendant in the underlying PCR case were incorporated by reference because those documents form the alleged wrongful conduct.**

The claims against Defendant SCAG are based on the facts set out in Paragraphs 95 – 99 of the Complaint. The filings of the Attorney General's Office are referenced in the Complaint and integral to those allegations and appropriate for the Court to consider. Documents referenced in the Complaint and central to the Plaintiff's allegations do not improperly convert the motion to dismiss into a motion for summary judgment, nor are they barred from the Court's consideration. This doctrine most commonly benefits defendants, but it operates with equal force in favor of plaintiffs. If the document is referenced and central, it applies regardless of which party is helped by its consideration.

The Fourth Circuit has endorsed the theory that courts can consider documents incorporated by reference in a complaint even if not attached to the complaint, as long as the documents are "…integral to the complaint and there is not dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).

The Complaint alleges that Defendant SCAG opposed Plaintiff's release on procedural arguments, as opposed to advocating for some particular legal position. The document attached as Exhibit 1[2] is not merely evidence of that opposition, it contains the

---

[2] Exhibit 1 is the Attorney General's *Petition for Extraordinary Writ for Post-Conviction Relief Bond* and contains the following separate documents, filed together by the South Carolina Attorney General: (a) the petition for a bond, (b) the Attorney General's Return

opposition itself. The document sets out the very argument Defendant SCAG made that forms the basis of the claims against Defendant SCAG in the Complaint. Exhibit 1 is the Defendant's sworn account of what it knew, what it was doing, and why it acted as it did. A party's own sworn account of its knowledge and conduct is central to any negligence claim premised on that knowledge and conduct.

This Exhibit is particularly important because it explains the Defendant SCAG's motivations. It was not acting out of any real sense of justice, but because even the South Carolina Circuit Court had read the PCR application in this case and recognized the strong evidence of innocence. EX 1, p.002-003.

**The Court can take judicial notice of the documents filed by the Defendant.**

The Federal Rules of Evidence allow a court to take judicial notice of facts at any stage of the proceedings. FRE 201. When a claim is based on an underlying action, the trial court can rely on filings in that action to reach the correct ruling on a motion to dismiss. *Zak v. Chelsea Therapeutics Int'l, Ltd.,* 780 F.3d 597, 607 (4th Cir. 2015).

Exhibit 1 sets out the Defendant's actions in this case and reflects the obstructive nature of the Defendant SCAG's conduct, which is central to Plaintiff's claims. The consideration of filings by a party in a related case is a well-established practice. Perhaps more importantly, failure to consider these filings would allow the Defendant SCAG to make an argument in direct conflict with the prior filings. The filings reveal the Defendant SCAG was not defending a criminal conviction. It was ignoring a credible claim of innocence for as long as possible.

**ARGUMENT**

**Plaintiff's complaint asserts a valid claim for negligence and gross negligence against the Defendant.**

    *1.    The Defendant South Carolina Attorney General's Office owed Plaintiff a*

---

to the application for Post-Conviction Relief, (c) a letter from Solicitor Finney to the Attorney General's Office, (d) Victor Weldon's plea transcript, and (e) a letter to the Attorney General from the Clarendon County Legislative Delegation.

*duty of care arising from assumed conduct.*

Defendant SCAG correctly states that South Carolina negligence law requires a duty as the threshold element of a negligence claim. But it is mistaken in claiming that no duty existed here.

South Carolina law has long recognized "the legal proposition that one who assumes to act, even though under no obligation to do so, may become subject to the duty to act with due care." *Crowley v. Spivey,* 285 S.C. 397, 406 (1985) (collecting cases). The Defendant's motion recognizes this rule. What it overlooks is the Defendant's own admission that it was "conducting an investigation" and was "in the process of collecting relevant materials from local law enforcement as part of its due diligence." (EX 1, 002). The Defendant had been provided with a wealth of evidence that Plaintiff was wrongfully convicted of the charge which landed him in prison and for which he was continuing to serve time. While it claims the Solicitor could act independently, the Attorney General's Office describes itself as follows:

> The South Carolina Constitution designates the Attorney General as the Chief Prosecuting Officer for the State, and along with the sixteen Circuit Solicitors, the Attorney General is responsible for the prosecution of all criminal matters within the South Carolina judicial system.

(See https://www.scag.gov/inside-the-office/ (last accessed June 3, 2026)).

The Defendant was equally responsible for Plaintiff's case. By assuming the duty to take on an investigative role related to that case, it had a corresponding duty to act with due care towards Plaintiff. Its own filings are replete with credible evidence Plaintiff was an innocent man serving a sentence for a crime he did not commit. The filings with the Supreme Court make it equally clear that it was ignoring that evidence and had no evidence to the contrary.

2.      *The Defendant South Carolina Attorney General's Office owed Plaintiff a duty of care arising from special circumstances.*

A duty to the Plaintiff also arose from the special circumstances arising from the unique nature of this case. *Edwards v. Lexington County Sheriff's Dep't.,* 386 S.C. 285,

293-94 (2010). This case presents an issue where it was not an unsupported claim of innocence that gave rise to the underlying post-conviction claims. Instead, it was the Third Circuit Solicitor who discovered the evidence of Plaintiff's innocence, acted on that evidence, and communicated that evidence to the Defendant. (EX 1, 016).

The Defendant SCAG chose to place Plaintiff's fate under its control. By actively becoming involved in the investigation into Plaintiff's innocence, it created a duty of care owed to Plaintiff. *See Newkirk v. Enzor,* 240 F. Supp. 3d 426, 438 (D. S. C. Mar. 8, 2017). In *Newkirk*, this Court cited a North Carolina case for the proposition that, "[i]n a negligence action, a law enforcement officer is held to the standard of care a reasonably prudent person would exercise in the discharge of official duties of a like nature under like circumstances." *Id.*, citing *Best v. Duke Univ.*, 337 N.C. 742, 448 S.E.2d 506, 511 (N.C. 1994). This Court ultimately decided the breach of that duty was a factual question for the jury.

In Pearson's case, the bar is even lower. This Court is not deciding whether there is a factual question for a jury, but whether there is any chance the Plaintiff can prevail on his theory. The combination of Defendant SCAG's knowledge of the facts of the case, power over the case, and failure to act on the case create the type of special circumstances that give rise to a duty of care.

3.      *Rule 3.8 of the South Carolina Rules of Professional Conduct confirms the duty Plaintiff alleges.*

Plaintiff recognizes Rule 3.8 does not create a right of action. Rather, the Rule confirms a duty that all prosecutors have to a wrongfully convicted party. Subsection (h) of the Rules states:

> When a prosecutor knows of clear and convincing evidence or information establishing that a defendant in the prosecutor's jurisdiction was convicted of an offense that the defendant did not commit, the prosecutor shall make reasonable efforts to seek to remedy the conviction.

Rule 3.8(h), RPC, Rule 407, SCACR.

The Rule is a South Carolina codification that recognizes prosecutors have an

affirmative obligation to make reasonable efforts to remedy a conviction when there is clear and convincing evidence that a person has been wrongfully convicted. Plaintiff has alleged the Defendant SCAG did not comply with that Rule. While failure to comply with the Rules of Professional Conduct is not evidence of negligence per se, such a violation can be considered when determining whether an attorney acted with reasonable care. *McNair v. Rainsford*, 330 S.C. 332, 343 (Ct. App. 1998).

        4.      *Plaintiff has adequately pled breach and causation.*

The Defendant SCAG argues that even if it owed Plaintiff a duty, Plaintiff cannot establish a breach because the court had not vacated Plaintiff's convictions at the time of its involvement. This argument conflates the absence of a judicial remedy with the absence of a legal obligation. The existence of a valid conviction does not insulate the Defendant from liability for conduct that perpetuates the enforcement of that conviction against a person it has clear and convincing evidence is innocent. If such an argument was correct, the justice system would be endorsing a system in which no one is ever responsible for an innocent person sitting in prison. By logical extension, this would lead to innocent people likely never being freed.[3]

Regardless of whether the Defendant SCAG had the unilateral power to free Plaintiff from prison, the claim presented in the Complaint involves whether Defendant discharged its responsibilities to Plaintiff with reasonable care. It did not, and that is certainly sufficient to survive a motion to dismiss.

## Plaintiff has properly pled false imprisonment against the Defendant.

Defendant argues that the false imprisonment claim fails because the Attorney General's Office played no role in the arrest or initial confinement. That argument relies on a misapprehension of South Carolina's false imprisonment law. It is not just the initiation of the confinement that matters. It is also the unlawful continuation of the detention

---

[3] The concern is readily apparent in this case. Until Judge Hood explicitly discussed the liability of the State, no one seemed particularly worried about Michael Pearson sitting in prison for a crime he did not commit.

that triggers liability.

False imprisonment in South Carolina is the "intentional restraint of another without lawful justification." *Carter v. Bryant*, 429 S.C. 298, 306 (Ct. App. 2020). The initial arrest is not the determinative factor in a false arrest case. As the Supreme Court of the United States has noted:

> False arrest and false imprisonment overlap; the former is a species of the latter. "Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is."

*Wallace v. Kato*, 549 U.S. 384, 388-389 (2007). Like the Supreme Court recognized, preventing a person's freedom is still false imprisonment, regardless of the role in the initial imprisonment.

Contrary to the Defendant's position, it is not the initial arrest that triggers this cause of action. Instead, it is the continuation of the confinement while disregarding the fact that independent sources, including the same Solicitor who convicted Pearson, recognized the imprisonment was illegal and Pearson was innocent of the charges. The Defendant SCAG appeared in Pearson's proceedings and raised arguments opposing the release of a man it was simultaneously investigating for innocence. It was a participant in the unlawful restraint, not an innocent bystander.

Defendant SCAG characterizes itself as "wholly disconnected from [Plaintiff's] arrest, prosecution and incarceration." This is contradicted by its own filings. While it may not have been involved in the initial imprisonment, the Defendant was directly responsible for prolonging and perpetuating the imprisonment despite having notice that the imprisonment was wrongful.

## Defendant South Carolina Attorney General is not entitled to absolute immunity.

The Defendant's immunity argument is premised on its claim that all actions it took were advocacy and entitled to absolute immunity. But its filings tell a different story.

Prosecutorial immunity under federal and state law is governed by a "functional"

test. *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Williams v. Condon*, 347 S.C. 227, 245-246 (Ct. App. 2001). The Court determines "… the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). Regardless of the actor, advocative functions enjoy absolute immunity, but investigative and administrative functions do not. *Nero v. Mosby*, 890 F.3d 106, 118 (4th Cir. 2018).

In August of 2025, the Defendant filed a petition in the Supreme Court of South Carolina describing its conduct at the time. It was "conducting an investigation" and "in the process of collecting relevant materials from local law enforcement as part of its due diligence" in preparation for the PCR hearing.[4] This is not an advocate preparing for court. Rather, it is an investigator gathering facts to assess the merits of an innocence claim. Under the functional test, invoked by the Defendant in seeking immunity, this conduct is not entitled to absolute immunity.

A South Carolina District Court applied the same functional analysis in *Clark v. Christopher,* where Judge Herlong found a Solicitor's Office employee was not entitled to absolute immunity because the conduct at the center of that case, attesting to the facts in a warrant application, was not an advocative function. *Clark v. Christopher,* 2023 U.S. Dist. LEXIS 134058, *7-8 (D. S. C. Aug. 1, 2023). The same principle applies here.[5] While investigating a case and collecting information from law enforcement, the Defendant SCAG is entitled to no more immunity than any other investigating party. In turn, the Defendant should face the same liability for failing to properly handle this matter. The procedure in which it took place and the party responsible have no bearing on the immunity question. It is solely determined by the function the party was performing. And

---

[4] EX 1, p.002

[5] Counsel recognizes this opinion is not binding on the Court but presents it as persuasive authority. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.")

when that function was investigative, absolute immunity does not apply.

### *Wilder v. Brooks* does not control this issue and its reasoning does not apply here.

The Defendant relies heavily on *Wilder v. Brooks* for the argument that attorneys in PCR proceedings have absolute immunity for the legal positions they take. *Wilder v. Brooks,* 2009 U.S. Dist. LEXIS 8213 (D. S. C. Feb. 3, 2009). But *Wilder* does not apply here.

*Wilder* was a pro se, in forma pauperis § 1983 complaint summarily dismissed at the screening stage under 28 U.S.C. § 1915A. Id. at * 1-2. There was no briefing, factual development, or functional analysis before that decision based on its procedural posture. The *Wilder* Court was not presented with a situation where the Attorney General's Office was opposing a prisoner's release while purportedly investigating a valid claim of innocence.

More fundamentally, *Wilder* involved a prisoner complaining that lawyers from the Attorney General's Office sent a letter that negatively affected his PCR application. *Id.* There was no allegation or evidence that those attorneys possessed affirmative knowledge of the prisoner's innocence. *Wilder's* holding does not apply to this case. The Attorney General here claimed to be actively investigating an innocence claim, had received the prosecuting Solicitor's written acknowledgement that the conviction was wrong, possessed information from the co-defendant exonerating Plaintiff, and had a confession from the actual perpetrator, all while actively opposing Plaintiff's release and claiming it was not bound to consider any of that information.

None of the quotes from *Wilder* in the motion are from the cited summary judgment ruling; they are from the Magistrate's Report and Recommendation. 3:08-cv-3089-MBS, Dkt. #8. This Report and Recommendation was simply a screening ruling without any real briefing. The district court's entire analysis of Plaintiff's objections consists of a single sentence that the factual corrections raised in those objections did not undermine the immunity reasoning before summarily adopting the R&R. That finding has no cites for the proposition that a PCR lawyer would be entitled to the same immunity as a trial

prosecutor. This alone is fatal to the Defendant SCAG's position. All the cases cited in that R&R specifically apply to trial-level prosecutors, where decisions are related to the function of initiating a prosecution. None of them relates to a case where a lawyer is placed on notice his target is innocent yet ignores the evidence and continues to press for his confinement. Whatever limited value *Wilder* has, it does not control this Court's decision, nor should it persuade it.

Defendant SCAG's analogy to the "whether and when" to prosecute language does not apply here. It comes from the *Imbler* opinion and is directly tied to the initiation of a prosecution. The language in the footnote was developed into a Fourth Circuit formulation in *Lyles v. Sparks*, 79 F.3d 372, 377 (4th Cir. 1996) and *Springmen v. Williams*, 122 F.3d 211, 212-213 (4th Cir. 1997). But that formulation was only related to the initiation of a prosecution. Opposing PCR relief thirteen years after a final conviction is not a decision about "whether and when to prosecute." The prosecution happened in 2012. That phrase cannot be stretched to mean "whether and when to release someone we have been told is innocent."

Absolute prosecutorial immunity was designed by the judiciary to protect the prosecutor from harassment and embarrassment for doing his job. *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976). Absolute immunity was ultimately created to ensure that prosecutors do not allow the threat of litigation to cloud its judgment. But the "functional test" creates a reasonable limitation so that the opposite does not occur: a prosecutor should not be so unconcerned with liability that there is no check on power. That is what occurred here and will continue to occur under the Attorney General's argument. Absolute immunity was not intended to immunize a state office from using procedural arguments as a shield to prevent correcting a wrongful conviction it knew or should have known was erroneous.

**The South Carolina Tort Claims Act does not bar Plaintiff's claims.**

The Defendant also invokes S.C. Code Ann. §§ 15-78-60(1) and (23) for the proposition that governmental entities are not responsible for losses resulting from

-12-

"institution or prosecution of any judicial or administrative proceeding" and "judicial or quasi-judicial action or inaction." Neither provision applies here.

The Tort Claims Act was enacted to provide a measured and structured waiver of sovereign immunity with certain exceptions. The conduct alleged in the Complaint is failing to disclose evidence of innocence, disregarding evidence of innocence, disregarding the obligations memorialized in Rule 3.8 of the Rules of Professional Conduct, and failing to make the slightest effort to investigate the Plaintiff's credible claims of innocence. None of that involves prosecution of a judicial proceeding as contemplated by the text of the statute.

The Defendant asks this Court to use the Tort Claims Act to create blanket immunity for the knowing perpetuation of a constitutional violation. Innocent people can be imprisoned with no remedy. This creates the untenable environment where the State actually has no incentive to correct injustices. As seen in this case, all parties had credible evidence of innocence and did nothing until they were forced to.

## CONCLUSION

The motion should be denied, and this matter should proceed to discovery. While prosecutors enjoy absolute immunity for their advocative function, they do not for their investigative or other functions. This is a reasonable position, because it protects the purpose of the immunity doctrine while refusing to give government lawyers a pass for fostering injustice.

More importantly, this is a narrow issue that, one hopes, will not be repeatedly before the Courts. There is nothing groundbreaking about holding a party possessing evidence of innocence accountable for refusing to act on that evidence.

Because Plaintiff has properly pled his causes of action against the Defendant SCAG and stated a plausible claim for relief, the motion to dismiss should be denied.

Respectfully Submitted,

-13-

*s/ Joshua Snow Kendrick*
Joshua Snow Kendrick (Fed ID 9037)
KENDRICK & LEONARD, P.C.
7 Mills Avenue (29605)
P.O. Box 6938
Greenville, SC 29606
Tel: (864) 760-4000
Josh@KendrickLeonard.com

Christopher S. Leonard (Fed ID 10998)
KENDRICK & LEONARD, P.C.
1516 Richland Street (29201)
P.O. Box 886
Columbia, SC 29202
Tel: (803) 667-3186
Chris@KendrickLeonard.com

June 4, 2026
Greenville, South Carolina

-14-