**STATE OF SOUTH CAROLINA**
**In the Supreme Court**

---

*Original Jurisdiction*

---

The State of South Carolina,

Petitioner,

v.

Michael Wilson Pearson.,

Respondent.

Appellate Case No.: 2025 _____

---

## PETITION FOR EXTRAORDINARY WRIT FOR POST-CONVICTION RELIEF BOND

---

Pursuant to S.C. Const. art. V, § 5 and *State v. Whitener*, 225 S.C. 244, 81 S.E.2d 784 (1954), the State, by and through undersigned counsel, respectfully asks this Court to exercise its original jurisdiction and grant Respondent, Michael Wilson Pearson, a personal recognizance bond pending resolution of his post-conviction relief action (2024-CP-14-00261) arising out of and pending in Clarendon County. The State offers the following in support of this motion:

### *Supreme Court of South Carolina's Authority to Act*

Article V, § 5 of the South Carolina Constitution provides: "The Supreme Court shall have power to issue writs or orders on injunction, mandamus, quo warranto, prohibition, certiorari, habeas corpus, and other original and remedial writs." S.C. Code Ann. § 18-1-90 provides: "Bail may be allowed to the defendant in all cases in which the appeal is from the trial, conviction, or sentence for a criminal offense. However, bail is not allowed when the defendant has been

1

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
001

sentenced to death, life imprisonment, or *imprisonment for more than ten years.*" (emphasis added).

Notwithstanding the statute that provides bail is prohibited when the defendant has been sentenced for more than ten years, this Court has held that its authority to issue writs and orders in the South Carolina Constitution vests it the power to grant bail, in its discretion, where the sentence exceeds ten years. *See State v. Whitener*, 225 S.C. 244, 81 S.E.2d 784 (1954) ("This Court, the judicial body of last resort in our state system of jurisprudence, has the inherent power to set bond in any case...This Court can grant bail, in its discretion, where the sentence exceeds ten years."). Therefore, this Court can properly grant Pearson bond in this matter.

### Reasons Bond Should Be Granted

Pearson's post-conviction relief application is based on newly discovered evidence in the form of co-defendant's (Victor Weldon) statement allegedly exculpating Pearson from the crime. The Attorney General's Office is currently conducting an investigation and is in the process of collecting relevant materials from local law enforcement as part of its due diligence. This effort is in preparation for the PCR hearing scheduled for September 29-30, 2025, which is based on the amended applications submitted by Pearson's counsel in July and August 2025. At this stage, the Attorney General's Office cannot concede that the allegations hold any legal merit or that Mr. Weldon's statements are credible in any capacity.[1] However, the Honorable Robert E. Hood's concerns regarding Pearson's continued incarceration as described in his comments at an August 4, 2025, status hearing convince the Attorney General's Office, in the interest of justice, for

---

[1] *See* Attachment A (noting Weldon's significant credibility issues based on his false sworn testimony at his post-conviction relief hearing that he had an alibi and his subsequent guilty plea admitting to committing the crime.). The State requests this Court take judicial notice of Weldon's PCR transcript which is already filed with this Court.

2

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
002

Pearson to be granted a personal recognizance bond pending the resolution of the underlying post-conviction relief action. **Of course, this position in the PCR matter does not preclude the Solicitor of the Third Circuit from taking independent action under Rule 29 based upon his own, separate investigation.**

After the filing of Pearson's amended post-conviction relief application, this Court vested the Honorable Robert E. Hood with the exclusive jurisdiction to hear and dispose of Pearson's case. Upon his appointment, Judge Hood scheduled two status conference hearings: the first on July 23, 2025, and the second on August 4, 2025. At the hearing on August 4, 2025, Judge Hood stated he had "never read an application with as much information and data that potentially supports someone being innocent." This statement has been widely quoted by the media and served as a significant factor in prompting the Clarendon County Legislative Delegation's public letter to the Attorney General. (*See* Attachment B) ("Recent developments, including reporting in the *Post and Courier* and statements from the Honorable Judge Robert E. Hood, have brought forward new information that raises plausible doubt about the role of the defendant, Mr. Michael Wilson Pearson, in this case.").

Additionally, an evidentiary hearing in the post-conviction relief action has been scheduled by this Court for September 29-30, 2025. The Attorney General's Office is currently in the process of collecting discovery and further investigating this matter in preparation for the September hearing. In light of the foregoing, in the interest of justice, the State requests Pearson be granted a personal recognizance bond pending resolution of his post-conviction relief action.

3

Respectfully Submitted,

ALAN WILSON
Attorney General

W. JEFFREY YOUNG
Chief Deputy Attorney General

DONALD J. ZELENKA
Deputy Attorney General

D. RUSSELL BARLOW, II
Senior Assistant Deputy Attorney General

T. CRUISE MITCHELL
Assistant Attorney General
S.C. Bar No. 105682

Post Office Box 11549
Columbia, South Carolina  29211
(803) 734-6305

By: _____
T. CRUISE MITCHELL
ATTORNEYS FOR RESPONDENT

August  21, 2025.

4

ATTACHMENT "A"

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
005

STATE OF SOUTH CAROLINA )  IN THE COURT OF COMMON PLEAS
COUNTY OF CLARENDON )  FOR THE THIRD JUDICIAL CIRCUIT
)
Michael W. Pearson, SCDC #238921, )  CASE NO. 2024-CP-14-00261
)
Applicant, )
)
v. )  **RETURN**
)
State of South Carolina, )
)
Respondent. )
_____ )

In response to Michael W. Pearson's (Applicant) application for post-conviction relief (PCR), commenced on June 7, 2024, and amended on July 15, 2025, Respondent, the State of South Carolina, makes the following Return:

## PROCEDURAL HISTORY

The records before this Court indicate Applicant is presently confined in the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Clarendon County. Applicant was indicted by the January 2011 term of the Clarendon County Grand Jury for first-degree burglary, attempted murder, armed robbery, grand larceny - $2,000 to $10,000, kidnapping, and possession of a weapon during a violent crime (2011-GS-14-0068). Applicant was represented by Harry Devoe, Esquire, at trial. On May 18, 2012, Applicant proceeded to a jury trial before the Honorable R. Ferrell Cothran, Jr., and was convicted of first-degree burglary, armed robbery, grand larceny, kidnapping, and possession of a weapon during a violent crime. Judge Cothran sentenced Applicant to imprisonment for thirty years for first-degree burglary, thirty years for armed robbery, five years for grand larceny, twenty years for kidnapping, and five

2025 AUG 8 PM 1:09
Shanita Brangman, CLK-Clarendon SC

Page 1 of 9
Michael W. Pearson | Return | 2024-CP-14-00261

PEARSON Response in Opposition to Motion to Dismiss
EXHIBIT 1
006

years for possession of a weapon during a violent crime. The sentences for first-degree burglary and armed robbery were consecutive, while the other sentences were to be served concurrently.

Applicant filed a timely notice of appeal. An appeal was perfected by Kathrine H. Hudgins, Esquire. The South Carolina Court of Appeals reversed Applicant's conviction in an opinion refiled on October 8, 2014. State v. Pearson, 410 S.C. 392, 764 S.E.2d 706 (S.C. Ct. App. 2014). The State petitioned for a writ of certiorari to review the decision of the Court of Appeals, which was granted by the Supreme Court of South Carolina. On March 23, 2016, the Supreme Court of South Carolina reversed the decision of the Court of Appeals and affirmed Applicant's convictions and sentences. State v. Pearson, 415 S.C. 463, 783 S.E.2d 802 (2016). The Remittitur was sent on April 8, 2016.

### *FIRST PCR ACTION:* 2016-CP-14-00240

Applicant's first PCR Action was commenced on May 27, 2016, in which he alleged the following grounds for relief:

1. Ineffective Assistance of Counsel

An evidentiary hearing was convened on July 24, 2018. At the evidentiary hearing, Applicant made an oral amendment, adding the following allegations:

1. Trial Counsel had been very ill before and during the trial, recovering from heart issues as well as his wife was also very ill at the time. We believe this contributed to ineffective representation in that the Attorney:
   a. Did not interview witnesses provided to him by the defendant prior to the hearing and did not call witnesses
   b. Did not enter a Notice of Alibi for the Defendant which was provided to him by the defendant and others
   c. Did not enter evidence provided to him by the defendant
   d. Did not speak with the defendant prior to trial other than brief encounter the weekend before the trial started
   e. Did not investigate the facts of the case
   f. Did not move for separate trial for the defendant from his codefendant
2. Newly Discovered Evidence

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
007

  a. New evidence that the co-defendant admitted to law enforcement that he did not know the defendant and other evidence exculpating the defendant.

In an order dated November 5, 2018, and filed November 20, 2018, the application was denied and dismissed with prejudice. Applicant filed a timely notice of appeal. Appellate Defender Jessica M. Saxon represented Applicant on appeal. Applicant filed a petition for writ of certiorari raising the following issue:

> The PCR court erred in finding trial counsel effective where trial counsel failed to make a motion to sever Petitioner's trial from that of his co-defendant where evidence entered at trial would not have been entered if Petitioner had been tried alone and resulted in the jury being unable to make a reliable judgment about Petitioner's guilt separate from that of his co-defendant.

On August 19, 2022, the South Carolina Court of Appeals denied his petition. The Remittitur was sent on September 12, 2022.

### *FEDERAL HABEAS CORPUS ACTION:* **5:23-02693-CMC-KDW**

On or about July 9, 2023, Applicant filed a petition for writ of habeas corpus raising the following grounds for relief:

1. Petitioner entitled to a directed verdict
   a. Co-defendant case was reversed on P.C.R and proof of elements of offenses not sufficient to send case to jury
2. Trial counsel failed to move to sever trial
   a. Pursuant to *Martinez v. Ryan*, Petitioner reserves the right to amend to add additional defaulted claims from his PCR action, and has only left them out due to not possessing the necessary portions of the state court record.

On November 6, 2023, Respondent filed a motion for summary judgment. On July 30, 2024, United States Magistrate Judge Kaymani D. West issued a report and recommendation that Respondent's motion for summary judgment be granted and the habeas petition be dismissed with prejudice. By order filed August 27, 2024, the Honorable Cameron McGowan Currie adopted the magistrate's report and recommendation in its entirety and dismissed the petition with prejudice.

PEARSON Response in Opposition to Motion to Dismiss
EXHIBIT 1
008

## CURRENT APPLICATION

On June 7, 2024, Applicant filed a *pro se* application for PCR in which he alleges the following:

1. Newly Discovered Evidence
   a. "Co-defendant made a statement of my innocence after my PCR."

On July 15, 2025, Applicant, through counsel, filed an amended application raising the following additional grounds for relief:

1. Newly Discovered Evidence
   a. Exculpatory evidence obtained by the Clarendon County Sheriff's Department after reopening their investigation into the robbery giving rise to Mr. Pearson's charges, indictment, and convictions; and
   b. Exculpatory evidence obtained by the undersigned in 2024 and confirmed in a June 10, 2025, affidavit signed by co-defendant Victor Weldon. The affidavit completely exonerates Mr. Pearson from any participation in or knowledge of the May 15, 2010, assault and robbery of Edward "Slick" Gibbons in Clarendon County, South Carolina. (Exhibit No. 1).
   c. Third Circuit Solicitor, Ernest A. Finney, III's admission that Mr. Pearson is innocent and is entitled to have his convictions and sentences overturned.

Applicant requests the following as his prayer for relief:

1. Requiring the preservation of all evidence in, related to, or regarding this case;
2. Permitting Mr. Pearson to engage in reasonable discovery as provided for under South Carolina law and the Rules of Civil Procedure;
3. Allowing Mr. Pearson to amend and supplement this Amended Application as may become necessary;
4. Granting an expedited hearing for an incarcerated innocent man; or,
5. Vacate Mr. Pearson's convictions and sentences, and dismiss the indictment and charges thereunder with prejudice.

Attached to this Return is the Clarendon County Clerk of Court records regarding the subject's convictions; Applicant's SCDC records, Applicant's records from his previous PCR and Federal Habeas actions, the records of the current PCR action, correspondence from Solicitor Finney concerning his discussions with Applicant's counsel (State's Exhibit 1), and the guilty plea transcript of Victor Weldon (State's Exhibit 2). Respondent reserves the right to amend this Return

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
009

upon receiving any relevant materials.

## RESPONSE TO ALLEGATIONS OF NEWLY DISCOVERED EVIDENCE

Applicant alleges the existence of exculpatory evidence obtained by the Clarendon County Sheriff's Department after reopening their investigation into the robbery giving rise to Applicant's charges, indictment, and convictions. Included in this evidence is an affidavit signed by Applicant's co-defendant, Victor Weldon, which allegedly exonerates Applicant from any participation or knowledge of the May 15, 2010, assault and robbery of Edward "Slick" Gibbons in Clarendon County, South Carolina. Applicant also alleges newly discovered evidence in the form of Solicitor Finney's admission that Applicant is innocent and is entitled to have his convictions and sentences overturned.[1]

The Uniform Post-Conviction Procedure Act states a person may institute a subsequent PCR action if "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice." S.C. Code Ann. § 17-27-20(A)(4). If the applicant contends there is evidence of a material fact not previously presented, the PCR application must be filed within one year after the date of actual discovery of the facts by the applicant or within one year of the date when the facts could have been ascertained by the exercise of reasonable diligence. S.C. Code Ann. §17-27-45(C) (emphasis added). An applicant requesting a new trial based on after-discovered evidence following a conviction must show that the evidence:

    (1)   Is such as would probably change the result if a new trial was had;
    (2)   Has been discovered since the trial;

---

[1] But See State's Exhibit 1 (correspondence from Solicitor Finney characterizing Applicant's allegations against him as "false and misleading"). Nevertheless, courts are not bound to accept a prosecutor's concession of error. See Orloff v. Willoughby, 345 U.S. 83, 87, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Cf.. Glossip v. Oklahoma, 145 S.Ct. 625, 221 L.Ed. 90 (2025).

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
010

(3) Could not by the exercise of due diligence have been discovered before the trial;

(4) Is material to the issue of guilt or innocence; and,

(5) Is not merely cumulative or impeaching.

Hayden v. State, 278 S.C. 610, 611, 299 S.E.2d 854, 855 (1983) (citing State v. Caskey, 273 S.C. 325, 256 S.E.2d 737 (1979)).

Before the Court will hold an evidentiary hearing, Applicant must make a prima facie showing he is entitled to relief. Welch v. MacDougall, 246 S.C. 258, 143 S.E.2d 455 (1965). Here, Applicant claims newly discovered evidence in the form of a statement by his co-defendant asserting Applicant's innocence. Applicant offers a June 10, 2025, affidavit signed by his co-defendant, Victor Weldon, which states that Applicant did not participate in the robbery.[2] The

---

[2] The vast majority of federal courts hold that an exculpatory statement from a co-defendant who did not testify at trial is not "newly discovered evidence" for the purposes of a motion for a new trial. See United States v. Owen, 500 F.3d 83, 91 (2d Cir. 2007) ("When a codefendant invokes his privilege against self-incrimination and refuses to testify, the defendant is denied the benefit of any potentially exculpatory testimony the codefendant might have provided."); United States v. Jacobs, 475 F.2d 270 (2d Cir. 1973) ("A court must exercise great caution in considering evidence to be newly discovered when it existed all along and was unavailable only because a codefendant, since convicted, had availed himself of his privilege not to testify; this is so even if counsel for the codefendant making a posttrial affidavit exculpating the movant had not allowed the affiant to be interviewed prior to trial."); United States v. Lockett, 919 F.2d 585, 591 (9th Cir. 1990) ("[W]hen a defendant who has chosen not to testify comes forward to offer testimony exculpating a codefendant, the evidence is not 'newly discovered.').

Federal courts have also held that when the defendant was aware or should have been aware of the co-defendant's statement, it cannot be considered newly discovered evidence. See United States v. Muldrow, 19 F.3d 1332, 1339 (10th Cir. 1994) ("If a former codefendant who originally chose not to testify subsequently comes forward and offers testimony exculpating a defendant, the evidence is not newly discovered if the defendant was aware of the proposed testimony prior to trial."); United States v. Owen, 500 F.3d 83 (2d Cir. 2007) ("[A]lthough codefendant's statement became newly available after trial, it was not newly discovered evidence, since defendant was aware of content of his conversations with codefendant…and he knew or should have known codefendant could offer material testimony."); Id. ("But when a defendant knew or should have known that his codefendant could offer material testimony as to the defendant's role in the charged crime, his inability to procure that testimony before or during trial should not be redressed by granting the defendant a new trial when the codefendant asserts his willingness to exculpate the defendant after the original trial is over."). United States v. Flynn, 791 F. Supp. 133, 136–37

PEARSON Response in Opposition to Motion to Dismiss
EXHIBIT 1
011

affidavit further implicates three additional individuals in the underlying robbery—Kevin Mellette, Leonard Smith, and an individual known as "Peanut." The affidavit indicates there exist additional witnesses who can potentially support or refute the credibility of Weldon's affidavit. Because the burden of proof rests with Applicant, and Weldon's statement exculpating Applicant, standing alone, is insufficient to entitle Applicant to post-conviction relief, the questioning and testimony of additional witnesses in this case is necessary to assess whether the Hayden factors have been satisfied as to the credibility of the affiant. See Hayden, 278 S.C. at 612, 299 S.E.2d at 855 (finding the affiant witness, described as "an admitted liar, thief, and drug dealer," was not credible, thereby undermining the request for relief.). Weldon's affidavit has particular credibility issues given that, under oath, during his guilty plea hearing, he affirmatively acknowledged the

---

(M.D.N.C. 1992) ("Codefendant's testimony known to defendant at the time of trial cannot be considered 'newly discovered evidence,'"). Id. ("Defendant surely knew that his co-defendants could testify about his involvement, if any, in the drug transaction."). But see United States v. Montilla-Rivera, 115 F.3d 1060 (1st Cir. 1997) ("Exculpatory affidavits from codefendants who did not testify at trial because they exercised their Fifth Amendment privileges were 'newly discovered' evidence for purposes of motion for new trial; on its face, proffered testimony in affidavits was material, could lead to different outcome if believed, and was not inherently implausible."); contra United States v. Jasin, 280 F.3d 355, 368 (3rd Cir. 2002) ("In the end, we opt to follow the majority rule in concluding that a codefendant's testimony known to the defendant at the time of trial cannot be considered 'newly discovered evidence' under Rule 33, regardless of the codefendant's unavailability during trial because of invocation of his Fifth Amendment privilege.").

Here, Applicant was aware or should have been aware—at least as early as 2018—that his co-defendant could offer exculpatory statements, as he raised a newly discovered evidence allegation relating to co-defendant's alleged exculpatory statement in his initial post-conviction relief action. (See Order of Dismissal signed November 5, 2018). Although the co-defendant's sworn affidavit was not executed until June 10, 2025, its recent availability does not convert it into newly discovered evidence. Applicant had the opportunity during his initial post-conviction relief proceeding to subpoena the co-defendant or otherwise investigate any information the co-defendant may have possessed. The fact that co-defendant later obtained post-conviction relief—through false testimony that he had an alibi—and ultimately secured a favorable plea deal resulting in the present affidavit, does not conclusively render the affidavit newly discovered evidence entitling him to post-conviction relief.

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
012

Solicitor's recitation of the facts as substantially correct—including the assertion Applicant was one of the individuals involved in the crime. (See State's Exhibit 2 pp. 9–11). Notably, Weldon made no effort to correct or qualify the Solicitor's statements at that time, despite being under oath. Weldon's admissions made during his guilty plea should be considered conclusive unless he presents valid reasons why he should be allowed to depart from the truth of his statements. Dalton v. State, 376 S.C. 130, 137, 654 S.E.2d 870, 874 (Ct. App. 2007).; Blackledge v. Allison, 431 U.S. 63, 73–74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing...carry a strong a presumption of verity").

As a result, Respondent submits further investigation into Applicant's allegation is warranted. To the extent this allegation raises a colorable claim of newly discovered evidence, Respondent submits an evidentiary hearing is required to properly resolve this action.

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
013

## CONCLUSION

WHEREFORE, Respondent requests that an evidentiary hearing be held on the claims of newly discovered evidence.

ALAN WILSON
Attorney General

W. JEFFREY YOUNG
Chief Deputy Attorney General

DONALD J. ZELENKA
Deputy Attorney General

D. RUSSELL BARLOW, II
Senior Assistant Deputy Attorney General

T. CRUISE MITCHELL
Assistant Attorney General

By:

ATTORNEYS FOR RESPONDENT
Office of the Attorney General
Post Office Box 11549
Columbia, SC 29211

August 8, 2025

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
014

# STATE'S EXHIBIT

# 1

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
015

## The State of South Carolina



## SOLICITOR

Ernest A. Finney, III
Solicitor

Third Judicial Circuit
Sumter County Courthouse
141 North Main Street
Sumter, South Carolina 29150

Phone: (803) 436-2185
Fax. (803) 436-2189

July 24, 2025

T. Cruise Mitchell, Assistant Attorney General
South Carolina Attorney General's Office
Post Office Box 11549
Columbia, South Carolina 29211

Re: State v. Michael Pearson
    Amended PCR Application- 2024-CP-14-0261

Dear Attorney Mitchell:

I am writing to notify your office of my strong objection to the false and misleading allegations contained in the above-mentioned Amended PCR application dated June 28, 2025.

My office has been working with local law enforcement for months trying to investigate Mr. Pearson's involvement in the crime which sent him to prison. We followed leads which led us to believe he may not have been involved in the crime. We contacted his lawyers in North Carona and informed them of a proposed hearing in Clarendon County before the Administrative Judge tentatively set for July 16, 2025, to have the matter ruled on the record, by the judge. The judge did not want to have this matter resolved by a consent order. During a telephone conference I informed Atty. Babb that after a conference with the victim's family I requested that his client consider and agree not to return to Clarendon County upon his release and that he would also agree to waive any civil damages claims against the victims or law enforcement. There was never any discussion of the release being conditioned upon these requests. There was never any demand or intent on my part to condition the release on these two requests. I simply was acting in the best interests of my victims and law enforcement, seeking fairness and avoiding conflict.

Atty. Babb did not call me back to discuss the decision of his client. He instead filed the Amended application the next day. He wrote that I was" interfering in delivering justice" adding, I was acting unethically.

I wanted your office to know that I take these allegations seriously and personally. I have done nothing to delay or impede the resolution of this matter. We have always followed the facts and acted upon them as the law requires. I have attached the e mails that were exchanged during our discussions.

As always, thank you for your willingness to assist us in the Third Circuit. I look forward to participating in the hearing before Judge Hood as soon as it is scheduled. Please call me if I can assist you in any way during this process.

Sincerely,

*Ernest A. Finney, III*

Ernest A. Finney, III

# STATE'S EXHIBIT

# 2

STATE OF SOUTH CAROLINA          *     GENERAL SESSIONS
                                 *
COUNTY OF CLARENDON              *     TRANSCRIPT OF RECORD

---------------------------------X
STATE OF SOUTH CAROLINA          *
                                 *
vs.                              * Case No. 2011-GS-41-0068
                                 *
VICTOR McCOY WELDON,             *
                                 *
                Defendant.       *
---------------------------------X

                                     June 20, 2023

B E F O R E:

     The Honorable R. Kirk Griffin, Presiding Judge

A P P E A R A N C E S:

Ernest "Chip" Finney, Esq.
          Assistant Solicitor for the State

Thompson Kinney, Esq.
          Attorney for the Defendant

Court Stenographer:  Bobbi Fisher, RPR
SC Official Court Reporter III

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
019

2

I N D E X

DESCRIPTION                                          PAGE

Proceedings                                            3

E X H I B I T S

(None.)

COURT REPORTER LEGEND

Dash (--)        Indicates an interruption in speech

Ellipses (...)   Indicates trailing off in speech

(ph)             Indicates phonetic word

[Verbatim]       Indicates the word is said as written

(Indiscernible)[Transcription]  Indicates word(s) is not
                 known due to audio recording quality

3

PROCEEDINGS

(The following proceedings started at 1:49 p.m.:)

VICTOR WELDON,

after having been duly sworn, was examined and testified to as follows:

MR. FINNEY: Please the Court, Your Honor.

THE COURT: Yes, sir, Mr. Finney.

MR. FINNEY: Good afternoon, sir.

THE COURT: Good afternoon.

MR. FINNEY: Your Honor, this is State versus Victor Weldon. 2011-GS-14-68 is the indictment number. Mr. Weldon was charged and convicted of armed robbery and burglary in the first degree and grand larceny, given a sentence back in July of 2010, and because of an appeal on a PCR, he was reversed and his case was sent back to us.

Through his representative, Mr. Thompson Kinney, we have reached a plea agreement, and we'd like the Court to approve it at this time.

THE COURT: All right. Thank you, Mr. Finney.

Mr. Kinney, you represent Victor Weldon?

MR. KINNEY: Yes, Your Honor.

THE COURT: Have you explained to him the nature of these charges and the possible penalties he could receive and his constitutional rights with regard to a jury trial?

MR. KINNEY: I have, Your Honor.

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
021

THE COURT: He's understood those things?

MR. KINNEY: Yes, sir, Your Honor.

THE COURT: All right. Mr. Weldon, today, are you under the influence of any drugs or alcohol, sir?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you had any treatment for any mental health problems?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Tell me about that.

THE DEFENDANT: At prison, they had treated me for PTSD and personality disorders.

THE COURT: All right. Those mental conditions, do they affect your ability to understand what you're doing?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you understand what we're here to do today?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And what's that?

THE DEFENDANT: A plea agreement.

THE COURT: Okay. Mr. Kinney, did you have any difficulty in your representation of Mr. Weldon with him understanding your conversations and the nature of what he's doing?

MR. KINNEY: No, Your Honor. We have had discussions about his past mental health diagnoses, and I think they are

5

under control.  I have never had any questions about his ability to understand what's going on and his ability to assist me.

THE COURT:  All right.  Mr. Weldon, looking at these charges, you understand that armed robbery carries a mandatory minimum of ten years and a maximum penalty of 30 years?  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that it is a considered a violent and most serious offense under South Carolina law?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that your sentence on this charge would require you to do 85 percent of the sentence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Grand larceny carries not more than five years.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that, under our law, it's considered a property crime, and if you get two or more convictions for property crimes, on a third charge, you would be subject to enhancement that would take the charge from -- could be something as minor as shoplifting -- it would take it to a ten-year offense?  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And, finally, Mr. Weldon, burglary in the

6

first degree, that carries a mandatory minimum of 15 years and all the way up to life in prison.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that it is likewise a violent and most serious offense and would require you to do 85 percent of your sentence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand the nature of the strike, the fact that these two penalties -- the armed robbery and the burglary in the first degree -- are considered most serious, and you have at least got one strike now.  So when you get out of prison, if you were to get another most serious offense or two serious offenses you could be facing life without the possibility of parole?  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Weldon, when you plead guilty, you give up certain constitutional rights.  First, you give up your right to remain silent because you're admitting your guilt. Next, you give up your right to a jury trial.  In that jury trial, the State would have the burden of you proving guilty beyond a reasonable doubt to all 12 jurors, and in that jury trial, you could question the State's witnesses against you, you could call witnesses to testify for you, and you could present a defense, but when you plead, you give up those jury trial rights and you waive your defenses and there will not be

7

trial.  Do you understand all that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Looking at the indictment, it states that you did, in Clarendon County, on or about May 15th of 2010, enter the delling of Edward Slick Gibbons without consent and with the intent to commit a crime therein and that you entered that dwelling in the nighttime in violation of Section 16-11-311 of the South Carolina Code of Laws.  Do you understand that charge?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  How do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  Count Three states you did, on that same day here in Clarendon County, by use of force, threat, or intimidation and armed with a deadly weapon, specifically a handgun, attempt to take and carry away goods and/or monies from a person or immediate presence of Mr. Gibbons with the intent of permanently deprive him of possession of those goods or monies in violation of Section 16-11-330 of the South Carolina Code of Laws.  Do you understand that charge?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  How do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  And finally, Count Four is grand larceny, which you did, in Clarendon County, on or about May 15th,

8

2010, take and carry away the personal goods of Edward Slick Gibbons, having a value of more than $2,000, specifically money, with the intent to deprive the owner permanently of the property and convert these goods to your own use in violation of Section 16-13-30 of the South Carolina Code of Laws. Do you understand that charge?

THE DEFENDANT: Yes, Your Honor.

THE COURT: How do you plead?

THE DEFENDANT: Guilty.

THE COURT: All right. Through negotiations with your lawyer and the State, this case is being presented to me as an 18-year sentence. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Other than that recommendation, has anybody promised you anything to get you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Anybody forced or threatened you?

THE DEFENDANT: No, Your Honor.

THE COURT: You're doing this freely and voluntarily?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Satisfied with the services of Mr. Kinney?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And he's done everything you have asked him to do to represent you properly in this case?

THE DEFENDANT: Yes, Your Honor.

9

THE COURT: He's gone over the case with you, including the discovery?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you have any complaints against him, the State, or law enforcement?

THE DEFENDANT: No, Your Honor.

THE COURT: All right. And, Mr. Weldon, you're pleading guilty to armed robbery, burglary in the first degree, and grand larceny because you are, in fact, guilty of those three offenses?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You have ten days from today's date to appeal the plea or the sentence. If you want to appeal, that appeal would have to be filed within ten days and would have to be filed in this court. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. The solicitor is to going tell me what happened in this case, and then I'll come back to you.

MR. FINNEY: If it please the Court, Your Honor.

THE COURT: Yes, sir.

MR. FINNEY: In the early morning hours, Your Honor, of July -- in -- excuse me, in May of 2010, Mr. Gibbons, who resides here in Clarendon County -- or he did -- came out of his house to enter his garage to get in his car to work, and he was accosted by what he described as three young men who

10

attacked him -- physically attacked him and tied him up with duct tape and robbed him at gunpoint.

He was able to fight, to some extent. He was afraid for the safety of his wife who was inside the house, and so he did not scream out to her but tried to find to defend himself.

The three men, after tying him up with duct tape and physically assaulting him, taking his private property, also stole his El Camino automobile and rode away with it.

At the trial, we were able to prove the identity of two of the men: One named Pearson and this man named Weldon, who is in front of you today.

Mr. Pearson's fingerprint was left on the El Camino when it was found a couple of miles away, and Mr. Weldon's DNA was found on the duct tape that was used to tie up Mr. Gibbons.

As you know, the PCR judge found error at the trial and reversed it. Mr. Gibbons is no longer with us to help us prosecute the case, and we have reviewed his prison record. Mr. Weldon has been not involved in any serious matters while in prison.

Because of his cooperation with us over the last few months, we have reached this agreement and believe it's in the best interest of the Court so that we can go on and try to identify -- we believe there was a driver that dropped the gentlemen off at the house that day, or near the house. We want his identity. We also want the identity of the third man

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
028

11

who was there, who was never prosecuted, and we plan to go forward with that based on the information we've received at this time.

So we would ask the Court to approve the 18-year agreement and give Mr. Weldon 4,719 days' credit for the time he served thus far.

THE COURT: Mr. Weldon, the facts that the solicitor recited about what happened that day, do you believe those facts are substantially correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I find there's a substantial factual basis for that, and I find the defendant's decision to plead guilty was freely, voluntarily, and intelligently made. He's had the advice and counsel of an attorney with whom he's satisfied, and I will accept the plea.

Mr. Kinney?

MR. KINNEY: Thank you, Your Honor. I would just ask you to accept the negotiated plea of 18 years concurrent, and we just thank the State for their willingness to work with us in this matter, and I think it's a just result.

THE COURT: Mr. Weldon, anything you want to say, sir?

THE DEFENDANT: I feel bad about what happened, but I hope I can put all this behind me and get on with my life.

THE COURT: All right. Thank you, sir.

MR. FINNEY: Please the Court, just for the record, I

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
029

12

wanted the Court to know that Mrs. Gibbons, her daughter, and her husband are present in court today. They have been fully advised and kept up to date on the movement of this case.

THE COURT: All right. I appreciate you bringing that to my attention, Mr. Finney.

And family members of Mr. Gibbons, I want you to know I appreciate you being here.

Based on what I have heard, I'm going to follow the recommendation or the negotiation of the State and the defense. Sentence on the burglary and the first degree charge is 18 years. It will be concurrent with the other pleas here today. He's given credit for 4,719 days. That's continuous service since July 20 of 2010.

The armed robbery sentence is the same: 18 years concurrent with the other pleas. Credit for 4,719 days, since July 20, 2010.

And on the grand larceny, the sentence is five years, because that's what grand larceny carries, concurrent with the others. Credit for 4,719 days.

Good luck to you, sir.

MR. KINNEY: Thank you, Your Honor.

(The hearing concluded at 2:01 p.m.)

13

# Certificate of Court Reporter

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CASE NAME:          State v. Victor Weldon

DATE OF HEARING:     6-20-2023

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I, Bobbi Fisher, do hereby certify that the foregoing transcript is a true and correct record of the above-captioned proceedings to the best of my ability; and that I am neither counsel for, related to, nor employed by any of the parties to this case; and I have no interest, financial or otherwise, in its outcome.

*Bobbi Fisher*

_/s/ Bobbi Fisher_____

Bobbi Fisher, RPR, Official Court Reporter III

Date Prepared:  6/10/2025

NOTE:  PURSUANT TO RULE 607(h)(1)(B), SCACR, "A COURT REPORTER SHALL RECEIVE THE FEE OF $1.00 PER PAGE FOR FURNISHING A COPY OF A PREVIOUSLY PREPARED TRANSCRIPT."  ALL REQUESTS FOR COPIES OF THE ATTACHED TRANSCRIPT (FORM 800) FROM OPPOSING PARTY OR NON-PARTIES MUST BE SENT TO THIS REPORTER AT BFISHER@SCCOURTS.ORG.

**ATTACHMENT "B"**

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
032

**Senator Jeff Zell**
  District 36 - Calhoun, Clarendon,
  Orangeburg & *Sumter* Counties

  Tel. (803) 212-6040
  JeffZell@scsenate.gov

**Committees:**
  Agriculture and Natural Resources
  Family and Veterans' Services
  Fish, Game and Forestry
  Judiciary
  Medical Affairs

**Rep. Fawn M. Pedalino**
**Clarendon Delegation Chair**
  District No. 64 – *Clarendon* &
  Sumter Counties

  Tel. (803) 212-6929
  FawnPedalino@schouse.gov

**Committees:**
  Labor, Commerce and Industry
  Rules



## *Clarendon County*
## *Legislative Delegation*

Friday, August 15, 2025

The Honorable Alan Wilson
Attorney General of South Carolina
P.O. Box 11549
Columbia, SC 29211

**Re: Ensuring Justice for the Victim's Family, Accountability in the Michael Wilson Pearson Case, and Review of Prosecutorial Conduct**

Dear Attorney General Wilson,

As the elected members of the Clarendon County Legislative Delegation, we are writing to you regarding the 2010 violent assault and robbery that left a respected Clarendon County resident severely injured.

Recent developments, including reporting in *The Post and Courier* and statements from the Honorable Judge Robert Hood, have brought forward new information that raises plausible doubt about the role of the defendant, Mr. Michael Wilson Pearson, in this case. While we are not in a position to determine guilt or innocence, the seriousness of the allegations and the nature of the evidence now being discussed make it imperative that the matter be reviewed without delay.

Justice in this case must mean two things: ensuring the victim's family receives closure through the prosecution of the correct individuals and making certain that no one remains incarcerated for a crime they did not commit. These goals are not in conflict; both are essential to restoring faith in the criminal justice system.
While we fully respect the independence of the judicial process and the prosecutorial discretion vested in solicitors, the allegations outlined in the public record demand urgent review and, if necessary, corrective action to preserve public trust in the integrity of our criminal justice system.

In addition to questions surrounding Mr. Pearson's conviction, we are concerned by public allegations regarding the conduct of the 3rd Circuit Solicitor's Office. Reports indicate that the solicitor may have been aware of information suggesting Mr. Pearson's possible innocence and later discussed conditions including waiving the right to civil litigation and refraining from returning to Clarendon County in connection with his potential release. While the solicitor denies these allegations, the appearance of such discussions in a matter involving potential wrongful conviction is troubling and warrants independent examination.

7 N. Brooks Street
Manning, SC 29102
(803) 433-7447

**Our concerns include, but are not limited to:**

1. **Plausible Doubt as to the Defendant's Involvement** – Sworn statements, including a co-defendant's confession naming other individuals, along with physical evidence and investigative records, raise credible questions that must be fully addressed.
2. **Delay in Pursuing New Leads** – Court filings indicate that exculpatory evidence and alternative suspect information have been available since at least Fall 2023. Any delay in reviewing and acting on such evidence risks leaving the true perpetrators unaccountable and prolongs uncertainty for the victim's family.
3. **Allegations of Improper Prosecutorial Conduct** – The reported discussions of unrelated conditions tied to cooperation, if verified, would raise serious ethical concerns and could undermine confidence in the pursuit of justice in this case.
4. **Public Trust in the Justice System** – The perception that a person may be wrongfully imprisoned while credible suspects remain at large, combined with questions about prosecutorial conduct, risks lasting harm to public confidence.

Given these concerns, we respectfully request that your office:
- Conduct an immediate review of all available evidence and investigative leads in this case.
- Determine whether all responsible parties have been properly identified and charged.
- Investigate the allegations regarding the conduct of the 3rd Circuit Solicitor's Office.
- Take appropriate action to ensure both the victim's family and the public can be confident that justice is being served.

The people of Clarendon County deserve certainty that the correct individuals are being held accountable, and that no one is serving time for a crime they did not commit. This requires a thorough, impartial review of the case in light of new information and assurance that prosecutorial actions are beyond reproach.
We appreciate your immediate attention to this matter and stand ready to assist in ensuring that justice is served in both fact and perception.

Respectfully,

**Representative Fawn Pedalino**
Chairman, Clarendon County Legislative Delegation

**Senator Jeffery Zell**
South Carolina Senate

7 N. Brooks Street
Manning, SC 29102
(803) 433-7447

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
034

**STATE OF SOUTH CAROLINA**
**In the Supreme Court**

---

***Original Jurisdiction***

---

The State of South Carolina,

Petitioner,

v.

Michael Wilson Pearson.,

Respondent.

Appellate Case No.: 2025 _____

---

## PROOF OF SERVICE

---

I, Blake Means, an employee of the Petitioner, hereby certify that the Petition for Extraordinary Writ for Post-Conviction Relief Bond has been served upon Respondent's counsel, James H. Babb, Esquire and Christine C. Mumma, Esquire via email today, August 21, 2025 to jbabb@nccai.org and cmumma@nccai.org. A courtesy copy is being forwarded to presiding Judge Robert E. Hood at rhoodlc@sccourts.org and rhoodj@sccourts.org.

I further certify that all parties required by Rule to be served have been served.

This 21st day of August, 2025.

_____
Blake Means
Legal Assistant to T. Cruise Mitchell
Assistant Attorney General

5

Pearson Response in Opposition to Motion to Dismiss
EXHIBIT 1
035